UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAFEALDEAN ALUSI | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-397-SDJ |
| | § | |
| CITY OF FRISCO, TEXAS | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Safealdean Alusi alleges that his former employer, the City of Frisco, Texas (the "City"), discriminated against him because of his national origin and retaliated against him for opposing the purported discrimination. The City now moves for summary judgment, arguing that it is entitled to judgment as a matter of law on all of Alusi's claims. (Dkt. #36). Also before the Court are the City's Objections to Plaintiff's Evidence. (Dkt. #41). For the following reasons, the Court **GRANTS** the summary-judgment motion and **OVERRULES** the evidentiary objections.

## I. BACKGROUND

Alusi, who is of Iraqi national origin, previously worked for the Frisco Fire Department ("FFD") as a firefighter and emergency medical technician ("EMT"). After working for the FFD for nearly two-and-a-half years, Alusi was terminated following an investigation prompted by reports that he had engaged in misconduct while off duty. More specifically, the FFD received two complaints that Alusi had behaved unethically while operating his dog rescue side-business. The first complaint came from a City of Temple police officer who reported that Alusi had "some type of" conflict with a Temple Animal Services officer regarding her adoption of a dog.

1

(Dkt. #38 at 117).[1] The second complaint, which concerned the same conflict, explained that Alusi "uses Frisco [fire] department to strong arm and threaten individuals through his rescue," and that he "flipped out at [the Animal Services officer] very aggressively" for attempting to find a new home for a dog that she had adopted from him. (Dkt. #37 at 74–75). Upon investigation, the City found that "the situation reached the point where [Alusi] began to threaten [the Animal Services officer] by saying he was going to say she stole [the dog] from him and file charges if she didn't return him immediately." (Dkt. #38 at 118).

Shortly after the FFD received the complaints regarding Alusi's conduct while operating his dog rescue, the FFD discovered that Alusi had misrepresented his physical limitations and his inability to return to work following an injury that led to him being on medical leave pursuant to a worker's compensation claim (Dkt. #38 at 38). According to Chief Mark Piland of the FFD, Alusi requested that he be provided a wheelchair to return to work in a modified capacity, which Chief Piland approved. (Dkt. #38 at 38). However, Chief Piland later discovered that the day before Alusi made this request, he was videotaped "walking in a parking lot and picking up a large dog and hoisting it into an Animal Services vehicle." (Dkt. #38 at 38). He was also observed "walking around in a Home Depot, not using a walker, wheelchair, or otherwise with the limitations Alusi represented to the FFD." (Dkt. #38 at 38). Alusi's absence from work for his purported physical limitations took place around the same

---

[1] The City attached a two-volume appendix to its Motion for Summary Judgment. The Court will refer to the documents and their page numbers by their CM/ECF number (i.e., Appendix 1 is identified herein as (Dkt. #37), and Appendix 2 is (Dkt. #38)).

time the FFD was experiencing staffing issues due to COVID-19. (Dkt. #38 at 103–04).

Alusi was terminated following an investigation into these instances of misconduct. In Alusi's termination notice, Chief Piland noted a number of City policies that Alusi violated, which boil down to (1) engaging in unethical and dishonest conduct unbecoming of a member of the FFD, (2) lying about physical capabilities while on restricted work duty, and (3) failing to cooperate and being dishonest during the investigation. (Dkt. #37 at 112–19).

Alusi subsequently appealed his termination, claiming that he was "treated . . . differently than other fire fighters who were not on worker's compensation." (Dkt. #37 at 111). He further noted that "[w]hat is extremely troubling to [him] is that the animosity from [his] supervisor and the fire chief[] appears solely motivated by the fact that [he] was trying to obtain proper medical treatment for [his] workplace injury." (Dkt. #37 at 111). Notably, Alusi made no mention of national origin discrimination. The appeal was assigned to Chief Piland, who ultimately denied the appeal after finding that the City's reasons for terminating Alusi were legitimate and supported by the evidence. (Dkt. #37 at 120–33).

Alusi again appealed his termination, this time to the Frisco City Manager. The City held a hearing on this appeal, after which the City's Director of Human Resources authored a memorandum to the City Manager recommending that Alusi's termination be upheld in light of his dishonesty and other misconduct that reflected poorly on the City. (Dkt. #37 at 136–38). At the time this memorandum was prepared,

Alusi had still not asserted national origin discrimination. It was only at the final hearing on his second appeal when Alusi—who was represented by new counsel—presented his brand new theory that he was terminated because of his national origin. In so doing, Alusi raised *for the first time* an allegation of national origin discrimination. (Dkt. #38 at 45). Following this hearing, the City postponed Alusi's appeal and conducted a thorough investigation into this new allegation. (Dkt. #38 at 45). At the conclusion of the investigation, Alusi's termination was once again upheld. (Dkt. #38 at 17–20).[2] The City found no evidence of national origin discrimination. (Dkt. #38 at 19–20).

After exhausting the City's appeals process, Alusi brought the present suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, arguing that he was discriminated against on the basis of his national origin and retaliated against for reporting the purported discrimination. He disputes the City's stated reasoning for terminating him, contending that the real reason for his termination is his Iraqi national origin and the fact that he reported a hostile working environment to his superior, Battalion Chief Jeff Morrison. According to Alusi, his fellow firefighters and supervisors—who are not Iraqi—treated him differently on

---

[2] In addition to noting Alusi's misconduct concerning his dog rescue and his lies regarding his physical capabilities, both Chief Piland's denial of Alusi's appeal and this final denial identified Alusi's "extended performance deficiencies" and his "subpar work history" as reasons for his termination. (Dkt. #37 at 133); (Dkt. #38 at 20). Alusi argues that since his termination notice only references his misconduct—not his poor performance—the City has provided inconsistent reasons for his termination which should lead the Court to find pretext. However, the denials of appeals do not provide inconsistent reasons—just additional ones. Alusi's poor representation of the FFD, his lies regarding his physical capabilities, and his failure to cooperate during the investigation are enough to support his termination.

account of his national origin by prohibiting him from joining extracurricular teams,[3] making insensitive comments, subjecting him to menial and unpleasant labor, and investigating his conduct when he was off duty.

The City previously moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). The Court denied the City's motion as to Alusi's national origin discrimination claims but granted it as to his retaliation claim. (Dkt. #28).[4] Dismissal of the retaliation claim was without prejudice, which allowed Alusi to amend his complaint. The City now moves for summary judgment on all claims.

## II. Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). A defendant is entitled to summary judgment if it "identifies a lack of evidence to support the plaintiff's claim on an issue for which the plaintiff would bear the burden of proof at trial," unless the plaintiff proffers "summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue." *Smith v. Harris Cnty.*, 956 F.3d 311, 316 (5th Cir. 2020) (cleaned up).

---

[3] Alusi contends that he was denied opportunities to participate on the Wildland fire team, CORE (an employee recognition committee), and the Honor Guard.

[4] The Court also dismissed with prejudice Alusi's claim premised on 42 U.S.C. § 1983 and his worker's compensation retaliation claim under Texas Labor Code § 451.001.

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When a movant shows that the nonmovant failed to proffer sufficient evidence to establish an essential element of its claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (cleaned up). Thus, the nonmovant must cite to the evidence it contends supports its opposition to the motion for summary judgment. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### III. DISCUSSION

## A. Evidentiary Objections

In his opposition to the City's summary-judgment motion, Alusi heavily relies on his own answers to the City's interrogatories to provide the factual basis for his claims. The City objects to this evidence, arguing that a party cannot use his own answers to overcome a motion for summary judgment. The City further argues that, even if Alusi's answers could be competent summary-judgment evidence, they are riddled with inadmissible hearsay. The Court will address these arguments in turn.

Pursuant to Rule 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," which includes "interrogatory answers." Courts in this circuit have held that "[v]erified or sworn pleadings are competent summary judgment evidence; unverified answers to interrogatories and interrogatories not based on personal knowledge are not." *Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F.Supp.2d 622, 636 (S.D. Tex. 2012); *cf. Brady v. Blue Cross & Blue Shield of Tex., Inc.*, 767 F.Supp. 131, 135 (N.D. Tex. 1991) ("To constitute competent summary judgment evidence . . ., the answers must satisfy the other requirements of Rule 56. Courts have considered 'verified pleadings' or sworn statements in support of summary judgment . . . ." (citation omitted)).

Thus, there appears to be no general rule barring a party from using his own answers to interrogatories to support his opposition to summary judgment, so long as the answers are verified and the "other requirements of Rule 56" are met. *See Tesco,*

904 F.Supp.2d at 636. Here, Alusi signed his answers under the penalty of perjury, and the Court finds that the answers generally comply with Rule 56.[5]

The City also argues that Alusi's factual narrative should be excluded because it "refers to various statements others allegedly made (which is hearsay and hearsay within hearsay)." (Dkt. #41 at 2). However, the City does not identify the specific statements in Alusi's nearly twelve-page narrative that constitute hearsay. Instead, it appears that the City requests that the Court strike the entire narrative or parse through the lengthy narrative itself to find statements that might be inadmissible. But "Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken." *Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 722 (N.D. Tex. 2006). Since the City failed to meet this requirement—and since a party may rely on his own interrogatory responses under the circumstances described above—the Court overrules the City's objections.

## B. Motion for Summary Judgment

Title VII prohibits employers from refusing to hire, discharging, or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[5] The City argues that Alusi's use of a third-person narrative shows that he does not have the requisite knowledge for his statements to be admissible. However, Alusi's use of third person does not alter the fact that he is narrating based on his own experience and knowledge.

color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a)(1). The statute further proscribes employers from retaliating against their employees for opposing a practice made unlawful under Title VII or participating in a Title VII investigation or proceeding. *Id.* § 2000e-3(a).

Title VII provides several theories of liability under which a plaintiff may recover. Alusi asserts three such theories here: hostile work environment, wrongful termination, and retaliation.[6] The Court considers these theories in turn.

### i. Hostile work environment

Alusi contends that the City subjected him to a hostile work environment in violation of Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (explaining that Title VII precludes employers from requiring employees "to work in a discriminatorily hostile or abusive environment"). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quoting *Harris*, 510 U.S. at 21). To survive summary judgment on a hostile work environment claim, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered unwelcome harassment; (3) the harassment was based

---

[6] The Court previously considered these claims in its order on the City's motion to dismiss. (Dkt. #28). In that order, the Court denied the City's motion as to Alusi's hostile work environment and wrongful termination claims, and it granted it as to his retaliation claim, but dismissed the retaliation claim *without* prejudice so that Alusi could replead. (Dkt. #28). As the Court explained then, while Alusi's *allegations* were sufficient to survive dismissal, he would be "required to submit evidentiary support for each of the allegations" at the summary-judgment stage. (Dkt. #28 at 11).

on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the alleged harassment but failed to take remedial action. *West v. City of Hous.*, 960 F.3d 736, 741 (5th Cir. 2020).

The City challenges the third, fourth, and fifth elements of Alusi's hostile work environment claim, namely whether the alleged harassment was based on Alusi's national origin, whether the alleged harassment affected a term, condition, or privilege of employment, and whether the City knew or should have known about the alleged harassment but failed to take prompt remedial action. The Court need only address the third and fourth elements, as Alusi's claim fails on these elements alone.[7]

### a.  Harassment based on national origin

Alusi has failed to show that he faced harassment based on his national origin such that he can establish a hostile work environment claim. Alusi contends that he was mistreated in several ways: (1) verbally, through a handful of comments his fellow firefighters made to him; (2) physically, by being forced to perform unpleasant tasks and training; and (3) professionally, by being restricted from certain work opportunities. However, the evidence Alusi proffers to support these allegations is sparse—and, to the extent any of Alusi's evidence shows he was treated differently than other Frisco firefighters, none of it demonstrates that he was treated differently

---

[7] Alusi argues that some of his direct supervisors participated in the alleged harassment and therefore he is not required to show that the City knew or should have known about the alleged harassment but failed to act. However, the Court need not address this argument, as neither the third nor fourth elements are satisfied.

*because* he is Iraqi. With no evidence supporting his argument that his national origin was the reason he was treated differently (to the extent he was treated differently), Alusi impermissibly relies on "speculation, improbable inferences, [and] unsubstantiated assertions"—but such evidence "cannot defeat summary judgment." *Moon v. Olivarez*, 26 F.4th 220, 226 (5th Cir. 2022) (cleaned up). Thus, the City is entitled to summary judgment because Alusi has failed to proffer any competent evidence substantiating his hostile work environment claim.

Alusi argues that several comments made towards him constitute harassment on account of his national origin. According to Alusi, his fellow firefighters told him that he was not a good fit for the FFD, asked Alusi why he did not participate in the Gulf War, told Alusi that all Muslims are terrorists, pointed out that Alusi was "blacker than" a black firefighter, and shouted "Yella, Yella" to Alusi. (Dkt. #40-2 at 3–6). However, many—if not all—of these comments had nothing to do with Alusi's national origin. Alusi provided no evidence that the firefighters believed he was unfit for the job *because* he is Iraqi. And although insensitive, the statement equating Muslims to terrorists concerns religion—not national origin. Likewise, the comment made about Alusi's skin color is just that—a comment about color. Both religion and color are protected classes under Title VII, but Alusi's claim is based only on his national origin. Further, as Alusi acknowledges, "Yella, Yella" is an Arabic phrase meaning "quickly, quickly." (Dkt. #38 at 391). Alusi took offense to this comment because he had not previously spoken Arabic with the firefighter who used the term. (Dkt. #38 at 391). But speaking Arabic does not specifically concern Alusi's national

origin, as speaking Arabic does not equate to being Iraqi, or vice versa. Thus, these comments do not support Alusi's hostile work environment claim.

In addition to these comments, Alusi asserts that he was not allowed to participate on certain teams within the fire department that he wished to be a part of, that his supervisors forced him to complete training exercises that no other firefighter was forced to complete, that another firefighter turned off his self-contained breathing apparatus ("SCBA") during training, and that other firefighters required him to complete menial tasks alone, such as labeling inventory, cleaning a personal bathroom, and cleaning up holiday meals. Alusi also complains that he was improperly surveilled while he was off duty. Lastly, Alusi states that, unlike other firefighters, he was required to provide a doctor's note or advanced notice when he wished to take time off.

None of this evidence supports Alusi's claim because Alusi has provided *no* evidence connecting this purportedly differential treatment to his national origin. Rather, Alusi simply notes that his fellow firefighters were not Iraqi, but that they were aware of his Iraqi national origin, and that they were not subjected to similar treatment. However, Alusi was required to provide evidence demonstrating that he was intentionally discriminated against because he is Iraqi. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("The ultimate question is whether the employer intentionally discriminated . . . ."). And again, Alusi's speculation is insufficient. *Moon*, 26 F.4th at 226.

12

Not only did Alusi fail to provide evidence that this "differential treatment" was due to his national origin, but the City also put on substantial evidence that these trainings and duties were routine and that Alusi was not treated differently than other firefighters. For example, although Alusi claims that he was not allowed to join extracurricular teams because he is Iraqi, Chief Piland explained in his declaration that "[i]t is not uncommon to remove a firefighter from extra opportunities . . . to address deficiencies or to allow the firefighter to address areas in need of improvement. (Dkt. #38 at 39); (Dkt. #38 at 150) (Deputy Fire Chief Scott Vetterick) (explaining that a firefighter may not be allowed to join an extracurricular team for a "variety of reasons," including "performance issue[s]" and "behavior issue[s]"). And that's exactly what happened to Alusi: Chief Piland removed Alusi from extracurricular teams after determining that Alusi "needed to focus" on his paramedic duties. (Dkt. #38 at 39).

As to Alusi's purportedly unique trainings, the City provided evidence showing that firefighters are trained on their deficiencies, meaning that it is not uncommon for firefighters to go through individual training exercises tailored to their shortcomings. (Dkt. #38 at 191).[8] Further, contrary to Alusi's contention, the City established that firefighters commonly have their SCBA system turned off during training to assess emergency response preparedness. (Dkt. #38 at 195). And as to Alusi's claim that he was forced to do menial and unpleasant tasks because he is

---

[8] The evidence shows that Alusi failed to properly complete trainings on numerous occasions. (Dkt. #37 at 21–22, 26).

Iraqi, the City provided testimony that inventory labeling and cleaning are daily operations that are not used as punishment, and that it is not unusual for individual firefighters to be assigned those tasks. (Dkt. #38 at 159–60, 167).

Further, the investigation into Alusi's misconduct came after the FFD received reports that Alusi acted deceptively and unethically outside of work when operating his dog rescue business and that he had misrepresented his physical limitations and inability to work. *See* (Dkt. #37 at 74–79). Nothing in the record indicates that the investigation or surveillance was due to his national origin.

The City also provided evidence that Alusi supersized his time off by combining sick days with vacation time in a magnitude never before seen by Battalion Chief Morrison from another firefighter, thus leading Battalion Chief Morrison to require doctor's notes or advanced notice from Alusi before approving any leave. (Dkt. #38 at 43). Contrary to Alusi's argument, this requirement had nothing to do with his national origin.

Tellingly, Alusi made no reference to any alleged national origin discrimination when he reported a hostile work environment to Battalion Chief Morrison. *See infra* Part III.B.iii; (Dkt. #38 at 377). In fact, he did not allege national origin discrimination until the final hearing of his second appeal—after he was terminated, lost his first appeal, and attended the first hearing on his second appeal.[9] And when asked during his deposition about some of the specific tasks and conduct

---

[9] Alusi's initial theory of mistreatment was that he was wrongfully fired for trying to obtain proper medical treatment for a workplace injury, and that he was treated differently than other firefighters "who were not on worker's compensation." (Dkt. #37 at 111).

he complains of, such as having to pull hose from a fire engine during a heat advisory, not being permitted to take part in extracurricular teams, cleaning a private bathroom, and generally feeling like he was being treated differently, Alusi could not identify any fact linking his alleged differential treatment to his national origin as an Iraqi. (Dkt. #38 at 379–81, 389, 391–92). To the contrary, when answering certain questions Alusi stated that he did not know why he experienced what he considered to be differential treatment. For example, when Alusi was asked if he maintains that a fellow firefighter would not let Alusi use his personal bathroom because of Alusi's national origin, Alusi testified, "he treated me differently. That's the best I can say." (Dkt. #38 at 392). And when Alusi was asked if he believed Battalion Chief Morrison removed him from the Wildland fire team because of his national origin, Alusi testified that he did not know why Battalion Chief Morrison removed him from the team.  (Dkt. #38 at 389).

Alusi's harassment theory therefore turns on two premises, (1) that he was treated differently than other firefighters, and (2) his co-workers knew he is Iraqi, leading to Alusi's conclusion that he was treated differently *because* he is Iraqi. But even assuming Alusi experienced differential treatment and his coworkers knew he is Iraqi, absent additional evidence these facts, standing alone, do not show that he was treated differently because of his national origin. And, critically, Alusi has failed to produce any evidence, including through his own testimony, connecting his alleged differential treatment at FFD to his protected status. *See Garza v. Laredo Indep. Sch. Dist.*, 309 F.App'x 806, 809 (5th Cir. 2009) (finding that plaintiff did not "demonstrate

that he was harassed because of his . . . national origin" when the plaintiff did not testify that he was treated differently due to his national origin). Likewise, the record is devoid of any evidence that Alusi made any complaint or reference to harassment or differential treatment based on his national origin until long after he was terminated by FFD, and his initial theory post-termination was that he was treated differently because he had been on worker's compensation, not because he is Iraqi.

In short, besides his subjective beliefs and unsupported assertions, Alusi has provided no evidence that any differential treatment was based on his national origin. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) ("[A] subjective belief of discrimination, however genuine, may not be the basis of judicial relief." (cleaned up)). Under the circumstances, summary judgment is appropriate.

### b. Harassment affecting a term, condition, or privilege of employment

Even if Alusi could establish that the purported harassment he experienced at FFD was based on his national origin, he failed to provide evidence that such harassment affected a term, condition, or privilege of his employment. The fourth prong of a hostile work environment claim requires Alusi to show that the alleged harassment was "sufficiently severe or pervasive" to "alter[] the conditions of [his] employment and create[] an abusive environment." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023) (cleaned up). The conduct complained of must be both objectively and subjectively offensive. *Harris*, 510 U.S. at 21–22. In determining whether a workplace constitutes a hostile work environment, courts look

16

at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The conduct that creates a hostile work environment must occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Recall that, according to Alusi, his fellow firefighters told him at various times that he was not a good fit for the FFD, asked Alusi why he did not participate in the Gulf War, told Alusi that all Muslims are terrorists, pointed out that Alusi was "blacker than" a black firefighter, and shouted "Yella, Yella" to Alusi. (Dkt. #40-2 at 3–6). To begin with, as the Court has explained, *see supra* Part III.B.i.a, most—if not all—of these alleged comments were not directed at Alusi's national origin, and thus they cannot be used to show harassment based on national origin. But even assuming the referenced comments could support such a claim, the comments were not frequent, physically threatening, or sufficiently severe to amount to a Title VII violation. First, the comments referenced by Alusi were infrequent: He only points to a handful of comments over the course of nearly a year. Second, the comments were not physically threatening. Instead, at most, they amount to "mere utterances," which are insufficient to establish a question of fact as to an objectively hostile work environment. As the Fifth Circuit has explained, the "mere utterance of an epithet which engenders offensive feelings in an employee"—but does not physically threaten

or humiliate the employee—"does not sufficiently affect the conditions of employment to implicate Title VII." *Arredondo*, 81 F.4th at 433 (quoting *Harris*, 510 U.S. at 21). These comments fall into the category of "simple teasing, offhand comments, and isolated incidents . . . [that do] not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (cleaned up).

Finally, the comments were not objectively severe. Alusi did not experience any slurs, jokes, or expletives aimed at his national origin. "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (5th Cir. 1991); *cf. Montgomery-Smith v. George*, 810 F.App'x 252, 259–60 (5th Cir. 2020) (finding laughing and glaring, being forced to move offices, not being invited to a luncheon, being asked not to participate in an office-wide event, and being isolated and ostracized to be insufficiently severe to support a hostile work environment claim). Here, the comments were neither frequent nor severe. And Alusi subjectively finding the comments "highly offensive" is insufficient to establish a Title VII violation. *See Harris*, 510 U.S. at 370 (holding that actionable conduct falls between conduct that is merely offensive and conduct that causes "tangible psychological injury"). Thus, the comments do not establish a hostile work environment.

Further, as explained above, Alusi failed to connect any physical requirements or responsibilities that he deems discriminatory to his national origin. As such, with no evidence that his particular duties as a firefighter and paramedic were related to

18

his national origin, these responsibilities and trainings, no matter how frequent, could not have affected a term, condition, or privilege of his employment under Title VII. *Garza*, 309 F.App'x at 809.

Considering the totality of the circumstances, the Court concludes that Alusi has failed to present sufficient evidence to create a genuine issue of material fact regarding whether the harassment he allegedly experienced was so severe or pervasive that it affected a term, condition, or privilege of his employment.

\*       \*       \*

In sum, Alusi has failed to establish that he suffered a hostile work environment because he is Iraqi. He presented no evidence that he was subjected to any harassment because of his national origin, nor did he show that the alleged harassment was severe or pervasive enough to affect a term, condition, or privilege of his employment. Because Alusi has failed to provide sufficient evidence to succeed on his hostile work environment claim, the City is entitled to summary judgment.

### ii. Wrongful termination

Alusi also contends that the City treated him worse than his colleagues—and ultimately fired him—because he is Iraqi. Under Title VII, a plaintiff can prove national origin discrimination either "(1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212–13, 135 S.Ct 1338, 191 L.Ed.2d 279 (2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973)). Alusi solely relies on the burden-shifting framework, which requires that he first make a prima facie case of national origin discrimination. To make a prima facie case of national origin discrimination, a plaintiff must prove that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was replaced by someone not part of his protected class or treated less favorably than a similarly situated employee. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Once a plaintiff has presented a prima facie case of discrimination, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for the plaintiff's termination. *McDonnell Douglas*, 411 U.S. at 802–03. If the employer successfully rebuts the plaintiff's allegations with nondiscriminatory reasoning, the burden shifts back to the plaintiff to provide evidence that the reasons cited by the employer are pretextual. *Id.* at 804. Ultimately, the plaintiff must provide specific evidence showing that an adverse employment action took place *because* of his protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

The City does not dispute Alusi's Iraqi national origin, Alusi's qualifications for the role, or that Alusi incurred an adverse employment action when he was terminated. Instead, it argues that it is entitled to summary judgment because Alusi failed to show that he was treated less favorably than a similarly situated employee.[10]

---

[10] Alusi does not argue that he was replaced by an individual that is not a part of his protected class, only that he was treated less favorably than similarly situated employees. (Dkt. #40 at 16).

To demonstrate differential treatment due to a protected status, a plaintiff must show that the misconduct for which his employment was terminated "was nearly identical to that engaged in by a[n] employee [not within his protected class] whom [the employer] retained." *Ramirez v. Gonzales*, 225 F.App'x 203, 207 (5th Cir. 2007) (cleaned up). This requires the plaintiff to provide a comparator who is similarly situated to the plaintiff—meaning that the employment actions of the plaintiff and the comparator were "taken under nearly identical circumstances." *Lee*, 574 F.3d 260 (cleaned up). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021) (quoting *Lee*, 574 F.3d at 260). Thus, employees are not similarly situated where differences in the individuals' conduct resulted in different treatment by the employer. *Lee*, 574 F.3d at 260.

Alusi offers two non-Iraqi firefighters as comparators. One of these firefighters received a five-shift suspension for engaging in sexual conduct on the fire station premises while on duty. (Dkt. #38 at 40). This firefighter immediately admitted to this misconduct and expressed remorse. (Dkt. #38 at 40). The second firefighter was reprimanded after his vehicle—which had an FFD sticker on it—was discovered in a ditch with an opened beer can inside. (Dkt. #38 at 40). This firefighter was never charged with driving while intoxicated, but the FFD issued a twenty-four-hour

suspension for the firefighter's admission of drinking beer in a vehicle with an FFD sticker. (Dkt. #38 at 40).

Alusi, on the other hand, was terminated after the City received multiple reports about his off-duty misconduct. An investigation into the misconduct led the City to conclude that Alusi was deceptive and unethical in the operation of his dog rescue, which reflected poorly on the FFD. The City further found that Alusi had lied about his physical limitations. On top of that, Alusi was uncooperative and untruthful during the investigation. Alusi does not contest these findings.

This record of misconduct is not "nearly identical" to the misconduct of Alusi's proposed comparators. *Ernst*, 1 F.4th at 340. Alusi nonetheless argues that the comparators are adequate under Fifth Circuit precedent because he views their misconduct as being more egregious than his. But while the "similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out," the offenses must still be of the same kind and the employees must have "essentially comparable violation histories." *Lee*, 574 F.3d at 260–61. Here, Alusi's overall misconduct, including his unethical behavior, dishonesty, and failure to cooperate during the investigation is not similar, let alone nearly identical, to his proposed comparators' conduct and violation histories. Employees "who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.* at 259–60.

Additionally, Alusi failed to show that he and the proposed comparators all report to the same supervisor or hold the same responsibilities. These are integral

components of identifying similarly situated employees. *See id.* at 260 ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."). Therefore, Alusi's proposed comparators are inadequate as a matter of law, and thus they cannot be used to show that he was treated less favorably.[11]

Because Alusi failed to offer any evidence that a similarly situated employee was treated more favorably than him, he failed to make a prima facie case of national origin discrimination. For this reason alone, his claim fails. *See Jefferson v. Christus St. Joseph Hosp.*, 374 F.App'x 485, 491–92 (5th Cir. 2010) (per curiam) (holding that appellants failed to make a prima facie case of national origin discrimination when they failed to show that other similarly situated employees were treated differently). But even if the burden shifted to the City, the City provided evidence of legitimate, nondiscriminatory reasons for Alusi's termination—specifically his unethical behavior, his lies about his physical capabilities, and his failure to cooperate with the investigation. *See, e.g.*, (Dkt. #37 at 10–16, 23, 25–30, 90–94); (Dkt. #38 at 38–39). In response, Alusi has proffered *no* evidence that these reasons were pretextual, and thus he has provided zero evidence that he was terminated *because* he is Iraqi. Any speculation to the contrary is insufficient. *See Newsome v. Collin Cnty. Cmty. Coll.*

---

[11] Despite all of this, Alusi argues that "[t]he only difference identified in the evidence, between [the proposed comparators] and Plaintiff, are their national origin." (Dkt. #40 at 18). This assertion is wholly unsupported by the evidence and disregards the substantial differences between the alleged comparators and Alusi.

*Dist.*, 189 F.App'x 353, 355 (5th Cir. 2006) (per curiam) ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy [the plaintiff's] burden.").

In sum, Alusi failed to establish that there is any dispute of material fact entitling him to proceed to a trial on his wrongful termination claim. He failed to offer an adequate comparator, thus failing to carry his initial burden to make a prima facie case of national origin discrimination. And even if the burden did shift, Alusi failed to offer any competent evidence that the City's legitimate, nondiscriminatory reasons were pretextual.[12] Therefore, the City is entitled to summary judgment on this claim.

### iii. Retaliatory termination

Finally, Alusi asserts that the City retaliated against him for opposing discrimination in violation of Title VII. To make a prima facie retaliation claim, the plaintiff must establish that (1) he engaged in a Title VII protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436–37 (5th Cir. 2022). Protected activity can take the form of opposition to discriminatory activity (opposition clause) or participation in an

---

[12] The "same actor" inference also weighs against a finding that there is a genuine issue of fact as to whether the City discriminated against Alusi. Here, Chief Piland both hired and fired Alusi. (Dkt. #38 at 368) (Alusi) (explaining that Chief Piland "was the final step" in the hiring process); (Dkt. #37 at 112–19) (termination letter). Since "the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff, there arises an inference that discrimination was not the motive behind plaintiff's termination." *Allen v. USPS*, 63 F.4th 292, 304 (5th Cir. 2023) (cleaned up). However, this inference is not necessary to conclude that Alusi's wrongful termination claim fails as a matter of law.

investigation or proceeding regarding a Title VII complaint (participation clause). *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff is only required to show that he reasonably believed that the employer's actions constituted a Title VII violation, not that the actions actually rose to that level of discrimination. *Id.* at 242. But merely raising a general complaint or vague allegation that there is unfair treatment without mentioning a practice that is unlawful under Title VII does not constitute a protected activity. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F.App'x 322, 326 (5th Cir. 2017).

Upon establishing a prima facie case of retaliation, the burden shifts to the defendant to provide legitimate, nonretaliatory reasoning for the adverse employment action. *Wantou*, 23 F.4th at 437. If the defendant provides nondiscriminatory reasoning for the adverse employment action, the burden then shifts back to the plaintiff to provide evidence that the proffered reason is a pretext for retaliation. *Id.*

In both his original Complaint and in his Amended Complaint, Alusi only alleged that he complained to Battalion Chief Morrison about a "Hostile Environment"—making no mention of his national origin. (Dkt. #1 ¶ 23); (Dkt. #33 ¶ 18). The Court previously dismissed Alusi's retaliation claim under Rule 12(b)(6), holding that "although Alusi has alleged that he complained of a hostile work environment to his supervisor, he d[id] not allege that he complained of a hostile work environment based on his national origin, which is a required element" for a viable

25

Title VII retaliation claim. (Dkt. #28 at 16). The Amended Complaint did not cure the deficiency.

Even assuming arguendo that Alusi properly alleged retaliation, he failed to present any evidence establishing that he reported that he was experiencing discrimination *because of* his national origin prior to his termination. Instead, he only reported a "Hostile Environment." *Cf.* (Dkt. #38 at 374–81) (Q: "[Y]ou said that you used the phrase hostile work environment, but that you could not say you brought up anything about your national origin or anything along those lines?" A: "The only thing that I recall at this time is the words 'hostile work environment.'").[13] But this amounts to only "a vague complaint, without any reference to an unlawful employment practice under Title VII," which is insufficient to succeed on a retaliation claim. *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (cleaned up). Therefore, the City is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment, (Dkt. #36), is **GRANTED**. Alusi's claims are **DISMISSED with prejudice**.

It is further ordered that the City's Objections are **OVERRULED**.

---

[13] Alusi argues that he engaged in a protected activity for which he was retaliated against when he eventually raised the issue of national origin in the final appeal of his termination to the City. This argument is nonsensical. Alusi cannot rely on a complaint he raised *after* he was terminated to establish that he was terminated for making that complaint.

**So ORDERED and SIGNED this 10th day of July, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE