UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAFEALDEAN ALUSI | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-397-SJD |
| | § | |
| CITY OF FRISCO, TEXAS | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Safealdean Alusi's Motion for a New Trial, (Dkt. #61), and Memorandum in Support, (Dkt. #62). For the following reasons, the Court concludes that the motion should be denied.

**I. BACKGROUND**

The factual background of this employment discrimination case is detailed in the Court's order on Defendant's motion for summary judgment, and the Court will only briefly summarize it here. *See* (Dkt. #57).

Alusi, who is of Iraqi national origin, previously worked for the Frisco Fire Department ("FFD") as a firefighter and emergency medical technician ("EMT"). After working for the FFD for nearly two-and-a-half years, Alusi was terminated after the FFD discovered that he had engaged in off-duty misconduct while operating his dog rescue side-business—including by threatening a City of Temple Animal Services Officer—and that he had misrepresented his physical limitations and his inability to return to work. In Alusi's termination notice, FFD Chief Mark Piland noted a number of City of Frisco (the "City") policies that Alusi violated, which boil down to (1) engaging in unethical and dishonest conduct unbecoming of a member of the FFD,

1

(2) lying about physical capabilities while on restricted work duty, and (3) failing to cooperate and being dishonest during the investigation.

Following his termination, Alusi appealed the adverse employment decision to Chief Piland, alleging that his termination was somehow connected to his being on worker's compensation. Alusi made no mention of national origin discrimination in this appeal. Chief Piland denied the appeal after finding that the City's reasons for terminating Alusi were legitimate and supported by the evidence. Following this denial, Alusi filed a second appeal to the Frisco City Manager. Once again, he did not assert national origin discrimination. It was only at the final hearing on his second appeal when Alusi—who was represented by new counsel—presented his brand new theory that he was terminated because of his national origin. In so doing, Alusi raised for the first time an allegation of national origin discrimination. Following this hearing, the City postponed Alusi's appeal and conducted a thorough investigation into this new allegation. At the conclusion of the investigation, Alusi's termination was once again upheld. The City found no evidence of national origin discrimination.

After exhausting the City's appeals process, Alusi brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, asserting claims premised on hostile work environment, wrongful termination, and retaliation. Alusi disputes the City's stated reasoning for terminating him, contending that the real reason for his termination is his Iraqi national origin and the fact that he reported a hostile work environment to his superior, Battalion Chief Jeff Morrison. According to Alusi, his fellow firefighters and supervisors—who are not Iraqi—treated him

differently on account of his national origin by prohibiting him from joining extracurricular teams, making insensitive comments, subjecting him to menial and unpleasant labor, and investigating his conduct when he was off duty.

The City moved for summary judgment on all three of Alusi's theories of liability. The Court granted the motion in its entirety, concluding that Alusi failed to present any evidence that he was treated differently on account of his national origin or that he was retaliated against for engaging in a protected activity. (Dkt. #57). Alusi now asks the Court to reconsider that order and the judgment against him.

## II. LEGAL STANDARD

Alusi presents his motion as a motion for a new trial, which is governed by Federal Rule of Civil Procedure 59(a). *See* FED. R. CIV. P. 59(a)(1) (permitting courts to "grant a new trial" after a jury or nonjury trial). However, there was no trial here, as Alusi's claims were dismissed on summary judgment. In such circumstances, courts construe Rule 59(a) new-trial motions as Rule 59(e) motions to reconsider the entry of summary judgment. *See Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 748 n.9 (5th Cir. 2006) (approving the district court's recharacterization of a motion for new trial as a motion to reconsider the entry of summary judgment); *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) (concluding that the motion for a new trial was "more properly construed as a request for reconsideration of the district court's entry of summary judgment").

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "A motion to alter or amend the judgment under Rule 59(e) must clearly

3

establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (cleaned up). Reconsideration may also be appropriate "when there has been an intervening change in the controlling law." *Id.*

## III. Discussion

Alusi presents several theories that he posits support altering the final judgment and permitting his claims to go to trial. As explained below, none of Alusi's theories has merit.

### A. Alusi Failed to Present Evidence that He was Discriminated Against Based On National Origin.

As detailed in the Court's order granting summary judgment for the City, Alusi argues that several comments made towards him by his colleagues constitute harassment on account of his national origin. According to Alusi, his fellow firefighters told him that he was not a good fit for the FFD, asked Alusi why he did not participate in the Gulf War, told Alusi that all Muslims are terrorists, pointed out that Alusi was "blacker than" a black firefighter, and shouted "Yella, Yella" (an Arabic phrase meaning "quickly, quickly") to Alusi. (Dkt. #40-2 at 3–6). The Court concluded that these comments did not demonstrate national origin discrimination because they had nothing to do with Alusi's national origin. (Dkt. #57). Alusi now argues that the Court erred in this conclusion, positing that the comments "generally referred to his national origin" such that a reasonable jury could conclude that they constitute national origin discrimination.

4

To support his argument, Alusi heavily relies on the Fifth Circuit's decision in *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007)—a case Alusi has not previously cited. There, the victim, a Muslim car salesman who was born in India, endured over a year of daily harassment due to his religion and national origin. *Id.* at 396–97. The car salesman was subjected to ridicule immediately following—and at least partially in response to—the September 11, 2001, terrorist attacks. *Id.* at 396. When the car salesman came in for his afternoon shift on September 11, 2001, one of his coworkers remarked, "[h]ey, there's Mohommed." *Id.* Another insinuated that he was involved with the attacks by asking, mockingly, "[w]here have you been?" *Id.* For more than a year after these incidents, numerous co-workers constantly referred to him as "Taliban" and called him an "Arab." *Id.* at 396–97. One colleague asked the salesman, "[w]hy don't you just go back where you came from since you believe what you believe?" *Id.* at 397. On another occasion, his manager told him, "[t]his is America. . . . This is not the Islamic country where you come from." *Id.*

In light of this abusive conduct, the EEOC sued the salesman's employer under Title VII, alleging both religious and national origin discrimination. Reversing the district court's grant of summary judgment in favor of the employer, the Fifth Circuit found that the evidence was "sufficient to show that the harassment [that the car salesman] suffered was based on his religion and national origin." *Id.* at 401. As to the national origin discrimination claim, the court found that the employer was not entitled to summary judgment because the comments described above "refer[red] to national origin generally (even though they d[id] not accurately describe [the

5

salesman's] actual country of origin)." *Id*. at 402; *see generally id*. at 401 ("Nothing in the [EEOC] guidelines requires that the discrimination be based on the victim's *actual* national origin." (emphasis added)).

Alusi's reliance on *WC&M* is misguided. At the outset, the *WC&M* court did not deviate from Title VII's requirement that the plaintiff show that he was harassed *because of* his membership in a protected class. *Id*. at 399 ("To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group . . . (3) the harassment was based on a protected characteristic . . . ."). Thus, discriminatory comments must still "refer to national origin" to support a national origin discrimination claim, even if those comments do not refer specifically to the plaintiff's country of origin. *See id*. at 402. In *WC&M*, the discriminatory comments did not identify a specific country, but they nonetheless referred to the car salesman's national origin. *See id*.

Here, the comments Alusi faced bear little—if any—resemblance to the comments in *WC&M*. Notwithstanding the fact that Alusi's colleagues knew he was Iraqi, none of the allegedly disparaging comments concerned his Iraqi national origin—or any national origin, for that matter. Unlike the salesman in *WC&M*, Alusi's co-workers did not reference his home country or tell him to "go back where [he] came from." Instead, as the Court explained in its order granting summary judgment, the allegedly discriminatory comments included remarks about Alusi's skin color and his religion. Race and religion are distinct protected classes under Title VII, but they are not the bases of Alusi's alleged discrimination. Neither those

6

comments nor the additional comments Alusi complains of—i.e., the comment concerning Alusi's fit within the FFD, a colleague's question about Alusi's lack of involvement in the Gulf War, and one colleague's use of Arabic—refer to Alusi's national origin.

Thus, as the Court previously concluded, Alusi provided no evidence that the allegedly discriminatory comments were made *because of* his national origin. This conclusion is bolstered by the fact that, unlike the salesman in *WC&M* who faced constant ridicule aimed at his national origin and religion in the wake of September 11, Alusi faced only a handful of comments—none of which referred to his national origin. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652, 654 (5th Cir. 2012) (explaining that "[a] wide range of behaviors can make a workplace uncivil, but . . . plaintiffs must show as one of the factors for their Title VII claim that the events were based on [the protected class]," and affirming summary judgment for defendant when the plaintiffs "did not have evidence that the alleged non-race-based harassment was part of a pattern of race-based harassment"). Alusi's speculation that the comments were about his national origin is insufficient to survive summary judgment. *See Moon v. Olivarez*, 26 F.4th 220, 226 (5th Cir. 2022) (explaining that "speculation, improbable inferences, [and] unsubstantiated assertions" "cannot defeat summary judgment" (cleaned up)).

Further, beyond questioning the Court's discussion of an unpublished opinion (an issue addressed later in this order), Alusi does not substantively challenge the Court's conclusion that he failed to present evidence showing that the alleged

7

harassment was "sufficiently severe or pervasive" to "alter[] the conditions of [his] employment and create[] an abusive environment." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023) (cleaned up). The comments Alusi points to were not frequent, threatening, or severe. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993) (explaining that courts must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"). Thus, the comments are insufficient to mount a claim for discrimination.

**B. Alusi Failed to Present Evidence that His Proposed Comparators were Sufficiently Comparable.**

Alusi further argues that the Court erred in concluding that he failed to identify sufficiently similar comparators to show that he was treated differently. Alusi contends that the Court required that his comparators be "completely or totally identical" to him—rather than nearly identical, as the case law requires. (Dkt. #62 at 7–8). However, the Court never required that Alusi identify identical comparators. Instead—quoting the Fifth Circuit—the Court explained that the "employment actions of the plaintiff and the comparator [must be] 'taken under *nearly identical* circumstances.'" (Dkt. #57 at 21) (emphasis added) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). And, as the Court further explained—again quoting the Fifth Circuit—"[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had

8

their employment status determined by the same person, and have essentially comparable violation histories." (Dkt. #57 at 21) (quoting *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021)).

In its previous order, the Court held that Alusi failed to present evidence showing that his adverse employment action was taken under nearly identical circumstances to those of his comparators. Specifically, the Court concluded that Alusi's conduct was not similar to his comparators' conduct, that they did not have similar violation histories, and that Alusi failed to show that he and the comparators all reported to the same supervisor or held the same responsibilities. Alusi does not provide any new evidence controverting these findings. Thus, the City was—and still is—entitled to summary judgment.

**C. Alusi Did Not Engage in Protected Activity Before He was Terminated.**

Alusi next argues that the Court erred in granting summary judgment on his retaliation claim, positing that a reasonable juror could infer Alusi suffered discrimination based on national origin even though he failed to report any such national-origin-based discrimination to his employer. Alusi misunderstands controlling law. To make a prima facie retaliation claim, the plaintiff must establish that (1) he engaged in a Title VII protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436–37 (5th Cir. 2022). "In a claim of protected opposition"—like Alusi's here— "an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its

9

discriminatory practices." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F.App'x 322, 326 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007)). "A vague complaint or general allegation of unfair treatment, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Id.*

Alusi concedes that he did not allege national origin discrimination until *after* he was terminated. Thus, the City was not put on notice of any alleged discriminatory practices. Therefore, Alusi did not engage in a protected activity. And since Alusi did not engage in a protected activity, he could not have been retaliated against for engaging in a protected activity. Accordingly, the Court correctly concluded that the City was entitled to summary judgment on this claim.

## D. Alusi's Objection to the Court's Discussion of Unpublished Opinions is Meritless.

Alusi also takes issue with the Court's discussion of unpublished Fifth Circuit opinions in its order, repeatedly asserting that the Court is not bound by such opinions. However, the Fifth Circuit has expressly recognized that its unpublished decisions may serve as persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) ("An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority."). Alusi does not contend that the unpublished opinions the Court cited were not apposite or instructive. Therefore, it was not a manifest error of law for the Court to discuss unpublished—but on-point—opinions.

### E. Alusi Failed to Present a Genuine Issue of Material Fact for Any of His Claims.

Alusi next contends that the Court should have denied summary judgment because he contests certain evidence in the record. Specifically, he argues that the Court committed a manifest error when it (1) noted that "Alusi [did] not contest" the City's findings from its investigations into his conduct and (2) concluded that Alusi failed to present sufficient evidence to create a genuine dispute of material fact regarding whether the City's reasons for terminating him were pretextual. However, Alusi does not present any new evidence, nor does he identify any disputed facts. Instead, Alusi merely points to excerpts in the record concerning the City's investigation of him and its decision to terminate him and says that he disputes such evidence. But Alusi does not providence evidence controverting the facts in the record, and his subjective perceptions and opinions about the investigation and his termination are not "disputed facts." Because Alusi fails to point to any evidence demonstrating a genuine issue of material fact concerning the claims dismissed by the Court, his request to alter the judgment necessarily fails.

\*    \*    \*

In sum, Alusi has failed to "clearly establish either a manifest error of law or fact," and he did not present any new evidence or identify a change in the law. *See Schiller*, 342 F.3d at 567.[1] Therefore, Alusi is not entitled to relief from the Court's judgment.

---

[1] Throughout his motion and supporting brief, Alusi repeatedly asserts "an argument for a good faith modification of the law in this matter," *see generally* (Dkt. #61, #62),

11

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff Safealdean Alusi's Motion for a New Trial, (Dkt. #61), which the Court construes as a Rule 59(e) motion to reconsider entry of summary judgment, is **DENIED**.

**So ORDERED and SIGNED this 27th day of August, 2024.**

                                                                   _____
                                                                   SEAN D. JORDAN
                                                                   UNITED STATES DISTRICT JUDGE

---

apparently as an alternative to each of his arguments that the Court misapplied controlling authority. Although not a model of clarity, it appears that Alusi requests that this Court modify the law in order to grant Alusi a "new trial," even if such request is untenable under governing law. Alusi repeatedly fails, however, to articulate exactly how he believes any of the legal principles applicable to this case should be "modified." Accordingly, the Court will not further consider Alusi's nebulous requests to "modify" the law.